UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
JANE DOE, on her own behalf, on behalf of her
husband, John Doe, and on behalf of all others
similarly situated,

                Plaintiff,

- against -

UNITED HEALTH GROUP INC., UNITED
HEALTHCARE INSURANCE CO., OXFORD
HEALTH PLANS, LLC, OXFORD HEALTH
PLANS (NY), INC., and OXFORD HEALTH
INSURANCE, INC.,

                Defendants.
------------------------------------------------------------ X

**MEMORANDUM AND ORDER**

17-CV-4160 (AMD) (RL)

**ANN M. DONNELLY**, District Judge.

On July 13, 2017, the plaintiff brought this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), the Mental Health Parity and Addiction Equity Act of 2008 codified at 29 U.S.C. § 1185a ("Federal Parity Act"), New York's "Timothy's Law" (N.Y. Ins. Law § 3221(1)(5)(A)), and Section 2706 of the Affordable Care Act codified at 42 U.S.C. § 300gg–5 ("ACA"), alleging that the defendants discriminated against them by imposing arbitrary reimbursement penalties on psychotherapy by psychologists and masters' level counselors. On December 1, 2017, the defendants moved to dismiss, claiming that the complaint fails to state a claim to relief. For the reasons set forth below, the defendants' motion to dismiss is granted in part and denied in part.

1

## BACKGROUND[1]

The named plaintiff, Jane Doe, is a participant in a large employer health insurance plan drafted, issued, administered and insured by the defendants. (ECF No. 1 ¶ 4.) Her husband, John Doe, is a beneficiary of the plan. (*Id.*) Since 2015, the plaintiff has been treated for an eating disorder. (*Id.* ¶¶ 5, 6.) She received individual counseling from a psychologist, and family counseling from a licensed clinical social worker who has completed post-graduate training. (*Id.* ¶ 5.) The plaintiff's husband has been treated by a different psychologist, and used the same social worker for family counseling. (*Id.*) The psychologists and the social worker are "out-of-network" or "non-participating" providers, and therefore do not have a contract with the defendants for in-network rates. (*Id.*)

The plaintiff and her husband submitted claims for their treatment from the psychologists and the social worker; the defendants issued benefit payments pursuant to the plaintiff's health insurance plan. (*Id.* ¶ 6.) The plaintiff's plan provides that her out-of-network benefits are determined based on an "Allowed Amount," which is the maximum amount a provider's bill is deemed eligible for reimbursement. (*Id.* ¶ 7.) The Allowed Amount for mental health services provided by psychologists and masters' level counselors, in contrast with counseling services provided by physicians, is reduced by 25% to 30% under the plan. (*Id.*) As a result, the plaintiff and her husband pay more money for psychotherapy and family counseling services from out-of-network non-psychiatrists. (*Id.* ¶ 29.)

On July 13, 2017, the plaintiff filed this complaint against the defendants, asserting claims for recovery of benefits under her health insurance plan, enforcement of her rights under the plan, and clarification of her rights to future benefits pursuant to the Federal Parity Act (Count I), Timothy's Law (Count II), Section 2706 of the ACA (Count III), and ERISA, 29 U.S.C. § 1132(a)(1)(B) (Counts VI and VII). (ECF No. 1 ¶¶ 108-19, 124-32.) The plaintiff also seeks to enjoin the defendants' acts and

---

[1] All factual references are allegations from the plaintiff's complaint, and are accepted as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

practices pursuant to ERISA, 29 U.S.C. § 1132(a)(3)(A) (Count IV), and to obtain equitable relief pursuant to ERISA, 29 U.S.C. § 1132(a)(3)(B) (Count V). (*Id.* ¶¶ 120-23.)

The defendants are comprised of entities within the United and Oxford Health corporate families. Oxford Health Insurance, Inc., is identified in the plaintiff's plan as its issuer and administrator. (*Id.* ¶ 14.) UnitedHealthcare Insurance, Co., is the direct parent of Oxford Health Insurance, and maintains a sample policy used in other United plans that includes language similar to the allegedly discriminatory reimbursement policy. (*Id.* ¶¶ 11, 14, 80-83.) UnitedHealth Group, Inc., is the ultimate parent company of UnitedHealthcare Insurance. (*Id.* ¶¶ 10, 11.) Oxford Health Plans, LLC, developed and oversaw administrative polices for behavioral health services applicable to United plans, including the plaintiff's plan, as part of UnitedHealth Group's operations. (*Id.* ¶ 12.) Oxford Health Plans (NY), Inc., issued explanations of benefits addressing the insurance claims submitted by the plaintiff and her husband. (*Id.* ¶ 13.) Both Oxford Health Plans and Oxford Health Plans (NY) share the same corporate office with Oxford Health Insurance in Shelton, Connecticut. (*Id.* ¶¶ 12, 13.)

On December 1, 2017, the defendants moved to dismiss all claims against UnitedHealth Group, UnitedHealthcare Insurance, Oxford Health Plans, and Oxford Health Plans (NY) and Counts I-VI of the complaint.[2] (ECF No. 32.) The plaintiff responded to the defendants' motion on January 12, 2018, and the defendants replied on February 2, 2018. (ECF Nos. 36, 39.) The plaintiff also filed a notice of supplemental authority on January 23, 2018. (ECF No. 38.) The defendants filed a notice of supplemental authority on April 12, 2018, and the plaintiff replied on April 16, 2018. (ECF Nos. 42, 43.)

---

[2] The defendants do not challenge Count VII. (ECF No. 32 at 4 n.3.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A court considering a motion to dismiss must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). A court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A claim has facial plausibility when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged;" the plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556, 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

A court considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is limited to the factual allegations in the complaint, the documents attached to the complaint as exhibits or incorporated in it by reference, matters of which judicial notice may be taken,[3] and documents either in the plaintiffs' possession or of which the plaintiffs had knowledge and relied on in bringing suit. *Faconti v. Potter*, 242 Fed. Appx. 775, 777 (2d Cir. 2007); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

---

[3] Under Federal Rule of Evidence 201(b), a court may take judicial notice of any fact that is "not subject to reasonable dispute" if it is "generally known within the trial court's territorial jurisdiction," or "can be accurately and readily determined from sources whose accuracy cannot be reasonably be questioned." The plaintiff requests that I take judicial notice of a 2016 Health Annual Statement filed by Oxford Health Partners (NY) with the New York State Department of Financial Services ("DFS") and reports of financial examinations done on behalf of DFS. (ECF No. 36 at 23 n.12.) Because they are publicly available and "not subject to reasonable dispute," I take judicial notice of these documents. *See* Federal Rule of Evidence 201(b).

4

## DISCUSSION

### A. Proper Defendants

*1. 29 U.S.C. §§ 1132(a)(1)(b), 1132(a)(3)*

The defendants move to dismiss all claims against UnitedHealth Group, Inc., UnitedHealthcare Insurance, Co., Oxford Health Plans, LLC, and Oxford Health Plans (NY), Inc. (the "Non-OHI defendants"). They argue that the plaintiff pleads no facts demonstrating that these entities are proper defendants for ERISA claims.

"In a recovery of benefits claim" under 29 U.S.C. § 1132(a)(1)(B), "only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 509-10 (2d. Cir. 2002) (quoting *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989)); *Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d. Cir. 1998) ("only the plan and the administrators and trustees of the plan in their capacity as such may be held liable" in an action seeking to recover benefits under Section 29 U.S.C. § 1132(a)(1)(B) (citations omitted)). "[I]f a plan specifically designates a plan administrator, then that individual or entity is *the* plan administrator for purposes of ERISA." *Crocco*, 137 F.3d at 107 (emphasis in original); *see also* 29 U.S.C. § 1002(16)(A)(i) (The term "administrator" is defined in ERISA to mean, in relevant part, "the person specifically so designated by the terms of the instrument under which the plan is operated."). A *de facto* administrator—an entity that controls, either directly or indirectly, the administration of the plan but not specifically designated by the plan as an administrator—cannot be held liable for benefits due under the plan pursuant to 29 U.S.C. § 1132(a)(1)(b). *Id.* at 107-08. However, "where [a] claims administrator has 'sole and absolute discretion' to deny benefits and makes 'final and binding' decisions as to appeals of those denials, the claims administrator exercises total control over claims for benefits and is an appropriate defendant in a § 502(a)(1)(B) action for benefits."

5

*N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 132 (2d Cir. 2015). The Second Circuit has not decided "whether a claims administrator that exercises less than total control over the benefits denial process is an appropriate defendant under § 502(a)(1)(B)," *id.* at 132 n.5 ("We need not and do not decide whether a claims administrator that exercises less than total control over the benefits denial process is an appropriate defendant under § 502(a)(1)(B)."), but "discretion alone is not enough to meet the statutory definition of an ERISA Plan administrator." *Bushell v. UnitedHealth Grp. Inc.*, No. 17-CV-2021 (JPO), 2018 WL 1578167, at *8 (S.D.N.Y. Mar. 27, 2018) (citing cases).

The plaintiffs allege that Oxford Health Insurance is identified in the plaintiff's plan as its issuer and administrator, (ECF No. 1 ¶ 14), and the parties agree that it is a proper defendant for ERISA claims under 29 U.S.C. §§ 1132(a)(1)(b), 1132(a)(3). (*See* ECF No. 32 at 11.) The plaintiff argues that the Non-OHI defendants are proper defendants because they "took part in administering her plan by creating and imposing the discriminatory policy." (ECF No. 36 at 18.) But that is not sufficient to be a proper defendant for ERISA claims under 29 U.S.C. §§ 1132(a)(1)(b), 1132(a)(3). The plaintiffs do not allege that the Non-OHI defendants are plan administrators, trustees of the plan, or claims administrators that exercise total control over the benefits denial process—the only proper parties for ERISA claims under 29 U.S.C. §§ 1132(a)(1)(b), 1132(a)(3). *See Chapman*, 288 F.3d at 509-10; *N.Y. State Psychiatric Ass'n*, 798 F.3d at 132. And her allegation that the Non-OHI defendants took part in administering the plaintiff's plan is insufficient to plead ERISA claims under 29 U.S.C. §§ 1132(a)(1)(b), 1132(a)(3) against those defendants. *Bushell*, 2018 WL 1578167, at *8 (dismissing ERISA claim against UnitedHealth Group because "conclusory allegation that UHG 'exercise[d] discretion in connection with the administration of Plaintiff's Plan' does not suffice").[4]

---

[4] The plaintiff argues that the allegations in *Bushell* were less detailed than the allegations in this case. (ECF No. 43 at 1.) But the level of detail is irrelevant. The plaintiffs do not allege that any of the Non-OHI defendants are plan administrators, trustees of the plan, or claims administrators that exercises total control over the benefits denial process. *See supra* pp. 5-6; *see also Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*, 217 F.

Accordingly, the Non-OHI defendants are not proper defendants for the plaintiff's ERISA claims under 29 U.S.C. §§ 1132(a)(1)(b), 1132(a)(3).

### 2. Breach of Fiduciary Duty[5]

The defendants argue that the plaintiff has not pled sufficient facts showing that the Non-OHI defendants are fiduciaries of the plaintiff's healthcare insurance plan, and that even if she had, they nevertheless cannot be held liable for the reimbursement policy at issue because the defendants' reimbursement processes for out-of-network psychotherapy providers was a business decision rather than a fiduciary function for the plaintiff's plan. (ECF No. 32 at 13-14.)

ERISA provides that "a 'person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, 'to the extent' that he or she 'exercises any discretionary authority or discretionary control respecting management' of the plan, or 'has any discretionary authority or discretionary responsibility in the administration' of the plan." *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996) (quoting ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A)). "[A] plan administrator engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of the plan documents." *Id.* at 511. "General fiduciary duties under ERISA are not triggered, however, when the decision at issue is, at its core, a corporate business decision, and not one of a plan administrator." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 362 n.2 (2d Cir. 2016) (internal quotation marks and alterations omitted) (quoting *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 88 (2d Cir. 2001)).

---

Supp. 3d 608, 631 (N.D.N.Y. 2016) (dismissing claim against claims administrator that did not have sole and absolute discretion to deny benefits and did not make final and binding decisions as to appeals because "there is no governing precedent for holding a claims administrator with less than total control responsible").

[5] Both sides seem to agree that the plaintiff has pled a breach of fiduciary duty claim, even though it is not included in Counts I-VII in the complaint. (ECF No. 1 ¶¶ 97, 108-132; ECF No. 32 at 13-14; ECF No. 36 at 21-23; ECF No. 39 at 8-9.) An ERISA breach of fiduciary duty claim is distinct from other ERISA claims under 29 U.S.C. §§ 1132(a)(1)(b), 1132(a)(3). *See Gates v. United Health Grp. Inc.*, No. 11-CV-3487 (KBF), 2012 WL 2953050, at *11 (S.D.N.Y. July 16, 2012).

The plaintiff alleges that "the Defendants together, including OHI, operate as an integrated whole to administer Plaintiff's plan, such that they jointly acted as a fiduciary." (ECF No. 36 at 21.) But regardless of whether the Non-OHI defendants acted as fiduciaries to administer the plaintiff's plan, the decision underlying the alleged breach of fiduciary duties—setting provider reimbursement rates—was a business decision rather than a fiduciary function. *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 50 F. Supp. 3d 157, 168-69 (D. Conn. 2014). In *American Psychiatric Association*, a group of psychiatrists and psychiatric associations sued an insurer and its parent company for breach of fiduciary duty for implementing a reimbursement policy that would "generally reimburse psychiatrists less than they reimburse non-psychiatric physicians who provide comparable medical services." *Id.* at 160 (internal quotation marks omitted). The court dismissed the claim, concluding that the defendants' reimbursement policy was a business decision, not a fiduciary function. *Id.* at 169. Here, the plaintiff's argument is the same—that the defendants' setting of reimbursement rates is a fiduciary function. Like the defendants in *American Psychiatric Association*, the defendants in this case were not acting as fiduciaries when they set reimbursement rates and polices. *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) ("ERISA does not create any substantive entitlement to employer-provided health benefits . . . . Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify or terminate welfare plans."); *Janese v. Fay*, 692 F.3d 221, 227 (2d Cir. 2012) (finding that former trustees and plan managers "were not acting as fiduciaries when they amended the plans").

Accordingly, the defendants' motion to dismiss the Non-OHI defendants is granted.

### A. Count I (ERISA, 29 U.S.C. § 1132(a)(1)(B), and Federal Parity Act)

Count I of the complaint alleges violations of the Federal Parity Act. (ECF No. 1 ¶ 85.) According to the plaintiff, the defendants' reimbursement policy "to reduce benefits for behavioral

health services provided by psychologists and masters' level counselors . . . violated [their] legal duty to comply with the Federal Parity Act, as incorporated into ERISA." (ECF No. 1 ¶ 114.)

The defendants argue that the plaintiff cannot establish a violation of the Federal Parity Act because she has not pled facts showing that the defendants' reimbursement processes are more stringent than processes used for comparable medical/surgical services. (ECF No. 32 at 21.)

"Congress enacted the [Federal Parity Act] to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans." *Am. Psychiatric Ass'n*, 821 F.3d at 356. Under the Federal Parity Act, "if an insurer 'provides both medical and surgical benefits and mental health or substance use disorder benefits,' the insurer must ensure that both 'the financial requirements' and 'the treatment limitations' applicable to mental health and substance use disorder benefits 'are no more restrictive' than the predominant financial requirements and treatment limitations that apply to medical and surgical benefits." *Id.* (quoting 29 U.S.C. § 1185a(a)(3)(A)). "There must be 'no *separate* treatment limitations that are applicable *only* with respect to mental health or substance use disorder benefits.'" *Welp v. Cigna Health and Life Ins. Co.*, No. 17-CV-80237 (DMM), 2017 WL 3263138, at *6 (S.D. Fl. July 20, 2017) (quoting 29 U.S.C. § 1185(a)(3)(A)(ii)).

"Treatment limitations include both quantitative treatment limitations, which are expressed numerically (such as 50 outpatient visits per year), and nonquantitative treatment limitations, which otherwise limit the scope or duration of benefits for treatment under a plan or coverage." 29 C.F.R. § 2590.712(a). Although nonquantitative limitations are not comprehensively defined in the Federal Parity Act or in its implementing regulations, an "illustrative list" of examples is provided in the regulations, including "[p]lan methods for determining usual, customary, and reasonable charges," and "[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit

the scope or duration of benefits for services provided under the plan or coverage." 29 C.F.R. § 2590.712(c)(4)(ii).

The plaintiff has plausibly stated a claim under the Federal Parity Act that the defendants' reimbursement policy is a discriminatory nonquantitative treatment limitation.[6] The reimbursement policy is reasonably viewed as a "plan method[] for determining . . . charges" and a "restriction[] based on . . . provider specialty." 29 C.F.R. §§ 2590.712(c)(4)(ii)(E) and (H). The plaintiff also alleges that the reimbursement policy limits the scope of behavioral health benefits by causing plan members to pay more for those benefits when they see a psychologist or masters' level counselor. There is no similar treatment restriction for medical/surgical healthcare benefits. This is a "separate treatment limitation[] that [applies] only with respect to mental health or substance use disorder benefits." 29 U.S.C. § 1185a(a)(3)(A)(ii). Thus, at this stage of the litigation, the plaintiff has stated a claim for violation of the Federal Parity Act. *See A.F. ex rel. Legaard v. Providence Health Plan*, 35 F. Supp. 3d 1298, 1315 (D. Or. 2014) (denying motion to dismiss Federal Parity Act claim because defendants' denial of coverage for certain autism therapy constituted a "'separate treatment limitation' that applies only to mental health disorders"); 29 C.F.R. § 2590.712(c)(4), Example 6 ("Because no comparable requirement applies to medical/surgical benefits, the requirement may not be applied to mental health or substance use disorder benefits.").

For these reasons, the defendants' motion to dismiss Count I of the complaint is denied.

---

[6] The parties agree that the reimbursement policy is a nonquantitative treatment limitation. (ECF No. 36 at 16; ECF No. 39 at 13.) The plaintiff asserts that the defendants' reimbursement policy is also a financial requirement and a quantitative treatment limitation. (ECF No. 36 at 15-16.) However, the complaint alleges only that the reimbursement policy is a nonquantitative treatment limitation. (ECF No. 1 ¶ 87 ("This non-exhaustive list [of nonquantitative treatment limitations] includes 'methods for determining usual, customary and reasonable charges,' which includes the methods United used for determining allowed amounts or eligible expenses for Non-Par services.").)

## B. Count II (ERISA, 29 U.S.C. § 1132(a)(1)(B), and Timothy's Law)

Count II of the complaint alleges violations of Timothy's Law, New York's mental health parity law, which requires all New York insurers to provide coverage for mental health care services that is "at least equal to the coverage provided for other health conditions." (ECF No. 1 ¶¶ 112-15); N.Y. Ins. Law § 3221(l)(5)(A).

The defendants move to dismiss Count II of the complaint, arguing that Timothy's Law does not provide a private right of action. (ECF No. 32 at 15-19; ECF No. 39 at 9-11.) The plaintiff responds that there is an implied private right of action under Timothy's Law, and that the law is incorporated directly into the plaintiff's healthcare plan.[7] (ECF No. 36 at 24-29.)

### 1. Implied Private Right of Action

In New York, to determine whether a statute implies a private right of action, courts consider the following essential factors: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Sheehy v. Big Flats Cmty. Day*, 73 N.Y.2d 629, 633-34 (1989). The third factor is the most critical. *Carrier v. Salvation Army*, 88 N.Y.2d 298, 302 (1996). Courts have traditionally refused to imply a private right of action "where a regulatory agency has either been selected or, in fact, serves to administratively enforce the duties created by a statute." *Hudes v. Vytra Health Plans Long Island*, 744 N.Y.S.2d 80 (App. Div. 3d Dep't 2002).

In *Hudes v. Vytra Health Plans Long Island*, the Appellate Division held that there was no private right of action to enforce a New York insurance law that is codified in the same section as Timothy's Law. *Id.* The court acknowledged that the plaintiffs—patients suing to enforce a provision

---

[7] It is undisputed that there is no *express* private right of action under Timothy's Law. (*See* ECF No. 32 at 15-16; ECF No. 36 at 24-29.)

regulating coverage for chiropractic treatment—were part of the class for whose benefit the statute was enacted, thus satisfying the second factor, but ultimately concluded that a private right of action should not be conferred because the statute envisioned an enforcement mechanism through a state agency. *Id.* Observing that the statute gave broad regulatory powers to the New York Superintendent of Insurance— succeeded by the New York State Department of Financial Services ("DFS")—over the health plans at issue, the court concluded that recognizing "a private right of action . . . would not advance the legislative purpose and would be inconsistent with the legislative scheme." *Id.* at 790.

The same analysis is appropriate for Timothy's Law. Because DFS is tasked with enforcing the law, a private right of action would be inconsistent with the legislative scheme. This is consistent with DFS's own understanding of the statute and enforcement scheme, as well as the holdings of the only two courts to have directly ruled on this issue—that there is no implied private right of action under Timothy's Law. *See Bushell*, 2018 WL 1578167, at *2-3; *Kamins v. United Health-Care Ins. Co. of N.Y.*, No. 14-64276 (N.Y. Sup. Ct. Mar. 10, 2016).

For these reasons, the Court concludes that there is no implied private right of action under Timothy's Law.

### 2. *Incorporation into the Plaintiff's Plan*

The plaintiff argues that she can sue under Timothy's Law because it is incorporated into her healthcare insurance plan. (ECF No. 36 at 24-26.) In other words, she contends that she can sue under the law as a violation of the terms of her plan. The plaintiff points to the following provision in her plan's Certificate of Coverage:

> **Conformity with Law.** Any term of this Certificate which is in conflict with New York State Law or with any applicable federal law that imposes additional requirements from what is required under New York State law will be amended to conform with the minimum requirements of such law.

The plaintiff in *Bushell v. UnitedHealth Grp. Inc.*, who suffered from anorexia nervosa, had an identical provision in her insurance plan and made the same argument that the plaintiff makes here—that she could bring an action under Timothy's Law because it was incorporated into her plan. 2018 WL 1578167. The court disagreed, concluding that because there was no private right of action under Timothy's Law, the plaintiff could not "enforce it under the guise of an ERISA claim." *Id.* at *4 ("A conclusion to the contrary would mean that this one provision allows suit for violation of *any* state or federal law." (emphasis added)). I agree with the court's analysis, and conclude that the plaintiff cannot sue for a violation of Timothy's Law.

For the foregoing reasons, the defendants' motion to dismiss Count II of the complaint is granted.

### C. Count III (ERISA, 29 U.S.C. § 1132(a)(1)(B), and Section 2706 of the ACA)

The same analysis applies to Count III of the complaint, which alleges violations of § 2706 of the Affordable Care Act, which prohibits healthcare insurers offering group or individual health insurance coverage from discriminating "with respect to participation under the plan or coverage against any health care provider who is acting within the scope of that provider's license or certification." 42 U.S.C. § 300gg–5(a). The plaintiff brings this claim under ERISA, 29 U.S.C. § 1132(a)(1)(B), "to recover benefits," "enforce her rights," and "clarify her rights for future benefits," alleging that the defendants violated their "legal duty to comply with Section 2706 of the ACA . . . as incorporated into ERISA." (ECF No. 1 ¶¶ 117-18.)

The plaintiff acknowledges that there is no private right of action under § 2706 of the ACA, but argues that she can sue for violations of § 2706 of the ACA under ERISA's civil remedies scheme because the ACA is incorporated into the terms of her plan and ERISA. (ECF No. 36 at 29.) For the same reasons the plaintiff cannot sue under Timothy's Law—it does not provide a private right of

13

action, *see supra* pp. 11-13—the plaintiff cannot seek to recover benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), for a violation of § 2706 of the ACA.[8]

For these reasons, the defendants' motion to dismiss Count III of the complaint is granted.

### D. Count VI (ERISA, 29 U.S.C. § 1132(a)(1)(B))

Count VI of the complaint alleges violations of ERISA, 29 U.S.C. § 1132(a)(1)(B), for the defendants' application of the allegedly discriminatory reimbursement policy where the healthcare plan and accompanying Certificate of Coverage did not include language describing the policy. (ECF No. 1 ¶¶ 124-28.) The plaintiff alleges that in those instances where the policy language was not included, the benefits determinations resulting from the reimbursement policy violated the plan. (*Id.*)

The defendants move to dismiss Count VI. They say that they have no legal obligation to include payment details in summary plan documents. (ECF No. 32 at 24-25.) The defendants' argument fails because Count VI does not allege a violation for failure to provide payment details; it seeks recovery of benefits for the times that the defendants applied their reimbursement policy, but did not include the language of the policy in the healthcare plan or accompanying certificate of coverage. In other words, the plaintiff alleges that the defendants' reimbursement policy was contrary to the explicit terms of the plan, and seeks to "recover benefits," "enforce [her] rights," and "clarify [her] future benefits under the terms of [her] plan." 29 U.S.C. § 1132 (a)(1)(B).

For these reasons, the defendants' motion to dismiss Count VI of the complaint is denied.

### E. Counts IV (ERISA, 29 U.S.C. § 1132(a)(3)(A)) and V (ERISA, 29 U.S.C. § 1132(a)(3)(B))

The defendants move to dismiss Counts IV and V of the complaint, arguing that the plaintiff is not entitled to equitable relief under 29 U.S.C. § 1132(a)(3) absent an actionable underlying predicate ERISA violation.

---

[8] Although the plaintiff is correct that § 2706 of the ACA is incorporated into ERISA at 29 U.S.C. § 1185d, she brings that action under ERISA, 29 U.S.C. § 1132(a)(3), in Counts IV and V, not Count III.

To the extent Counts II and III are dismissed, the defendants' motion to dismiss Counts IV and V is granted. However, because underlying predicate ERISA violations remain in Counts I and VI, the defendants' motion to dismiss Counts IV and V with respect to those underlying violations is denied.

In addition, the defendants' motion to dismiss Counts IV and V with respect to the alleged violations of § 2706 of the ACA as incorporated into ERISA is denied. In addition to claiming that the plaintiff lacks standing to bring Count III because § 2706 of the ACA lacks a private right of action, the defendants also argue that the plaintiff is not a proper plaintiff because § 2706 "is clearly intended for the protection of health care providers, not health plan members." (*Id.*) According to the defendants, "ERISA may only be used to enforce a right *of the health plan member.*" (*Id.* at 20 (emphasis in original).)

It is not disputed that § 2706 of the ACA is expressly incorporated into ERISA. *See* 29 U.S.C. § 1185d (incorporating provisions of part A of title XXVII of the Public Health Service Act, as amended by the ACA). Under ERISA's civil remedies scheme, the plaintiff is "empowered to bring a civil action . . . to enjoin any act or practice which violates any provision of [ERISA]" or "to obtain appropriate equitable relief . . . to enforce any provision of [ERISA]." 29 U.S.C. §§ 1132(a)(3)(A) and (B). Thus, according to the plain terms of the statute, the plaintiff can sue under ERISA, 29 U.S.C. § 1132(a)(3), for violations of § 2706 of the ACA as incorporated into ERISA.

The defendants have cited no case law or legislative history to support their assertion that participants and beneficiaries are barred from bringing an *ERISA claim* for violations of § 2706 of the ACA as it is incorporated into ERISA. Accordingly, the motion to dismiss Counts IV and V with respect to violations of § 2706 of the ACA as incorporated into ERISA is denied.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss the complaint is granted in part and denied in part. The Non-OHI defendants are dismissed. The defendants' motion to dismiss Counts II and III is granted. The defendants' motion to dismiss Counts I and VI is denied. The defendants' motion to dismiss Counts IV and V is granted in part and denied in part.

**SO ORDERED.**

s/Ann M. Donnelly

The Honorable Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
August 20, 2018