1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116



March 12, 2021

**VIA ECF**

Honorable Robert M. Levy
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:   *Jane Doe v. Oxford Health Ins., Inc.*, No. 1:17-cv-4160-AMD-RML: Motion for
> Protective Order

Dear Judge Levy:

Pursuant to Fed. R. Civ. P 26(c), Defendant Oxford Health Insurance, Inc. (OHI) respectfully moves this court for a protective order protecting 64 privileged documents from production. Counsel for Plaintiff have indicated they will be moving to compel production in parallel litigation, *Jane Smith v. United Healthcare Insurance Company*, Case No. 4:18-cv-06336 (N.D. Cal.). OHI requests that the Court enter a protective order in this matter because Plaintiff contends that, if the *Smith* Court orders disclosure of privileged documents, OHI should have to produce the documents in this action as well. Such a result would be contrary to the law of this case and the controlling law in the Second Circuit. This Court should not permit Plaintiff to bypass the bedrock principle that open communication between attorney and client are protected from disclosure based on the misguided notion that another court should dictate discovery in this matter. The communications at issue in this dispute are attorney-client communications between OHI and its counsel, in many instances on the topics being litigated *in this case*. Plaintiff's assertion that they should nevertheless be produced based on the "fiduciary exception" runs directly counter to the purpose of privilege—to allow OHI and its affiliates to freely seek and obtain legal advice from its counsel without fear that such candid and private communications will be disclosed and used against them in a future proceeding.

The privileged nature of the challenged documents and the overreach of Plaintiff's request is evident on the face of the documents. For example, Plaintiff seeks production of: (1)

████████████████████████████████████████ (2) ████████████████████████

████████████ and (3) ████████████████████████

March 12, 2021
Page 2

█████████████. OHI already provided Plaintiff with privilege log entries describing these documents and their privileged nature (*see* excerpts in Exhibit A), and provides further description in Exhibit B. OHI also is prepared to submit each of the documents discussed herein for *in camera* review, if the Court would like it to do so.

Despite the clearly privileged nature of the communications at issue, Plaintiff asserts that she should be able to review and ultimately use OHI's most sensitive privileged communications in this litigation pursuant to the fiduciary exception. But the fiduciary exception is a narrow exception to the attorney-client privilege that applies only to legal advice that is intended to assist in the fiduciary function of the administration of a specific plan, and only where the advice is not made in anticipation of litigation or regulatory proceedings. *See In re Long Island Lighting Co.*, 129 F.3d 268, 271–72 (2d Cir. 1997). The fiduciary exception does not apply with respect to legal advice regarding plan design, plan amendment, or other general business functions that are not fiduciary in nature. *Id.* The fiduciary exception's narrow deviation from the law of privilege does not apply here. In fact, in dismissing certain counts of Plaintiff's complaint, the Court <u>in this case</u> has already ruled that "***the defendants in this case were not acting as fiduciaries when they set reimbursement rates and policies***." Order on Motion to Dismiss, ECF No. 45 at 8 (emphasis added). This is the law of the case, and it should govern the Court's decision on the issue at bar. As this Court previously held, setting provider reimbursement rates is a "business decision rather than a fiduciary function." *Id.*

Even if the Court had not previously held that the acts at issue in this case were non-fiduciary, the Court should immediately reject application of the fiduciary exception to at least nine of the privileged documents sought by Plaintiff because they involve communications relating to ongoing or anticipated litigation or regulatory proceedings. These communications involve protected attorney work product, to which the fiduciary exception does not apply.

Put simply, Plaintiff's request for relief seeks to turn the law of privilege on its head by misapplying the narrow ERISA fiduciary exception to non-fiduciary acts, and in so doing, provide access to OHI's adversaries of its confidential and highly sensitive privileged documents. The Court should grant a protective order affirming OHI's right to withhold its privileged communications.

## I.   Procedural Background

Plaintiff and her husband, John Doe, were participants in a fully-insured large employer sponsored health plan administered by Defendant OHI. Am. Compl. (ECF No. 58) ¶¶ 4, 18. Plaintiff's core remaining allegation in this case is that OHI's former practice of reducing physician level reimbursement for out-of-network outpatient psychotherapy services rendered by psychologists and master's level counselors by 25% and 35%, respectively—referred to as "tiered reimbursement"—violates the Mental Health Parity and Addiction Equity Act ("MHPAEA," 29 U.S.C. § 1185a). Am. Compl. Counts I, IV, and V.[1] Plaintiff asserts claims

---

[1] The Court already dismissed Counts II (asserting relief under Timothy's Law) and III (asserting relief under Section 2706 of the Affordable Care Act ("ACA")). *See* Order on Motion to Dismiss, ECF. No. 45. Counts VI and VII assert allegations specific to language in Plaintiff's plan, which do not bear on the issues in this motion.

March 12, 2021
Page 3

for relief under ERISA's remedial scheme.  *Id.*  OHI asserts that there is nothing illegal about paying providers with different licensure, credentials, training, and experience at different reimbursement rates.

OHI has produced more than 21,000 documents in this case, and provided a privilege log detailing the bases for withholding or redacting privileged documents.  The OHI privilege log includes information for each document withheld on the basis of privilege, such as the author and recipients, the attorney providing the basis of privilege, a description of the privilege applicable to the document and, at Plaintiff's request, reasons why the fiduciary exception does not apply to each document.

The parties have exchanged numerous letters wherein Plaintiff and the plaintiffs in the *Jane Smith* litigation assert that OHI should produce the vast majority of the documents on the privilege log, either because Plaintiff contends privilege does not apply or because they contend the fiduciary exception trumps the privilege asserted.  OHI has responded with additional information supporting its privilege assertions, and explanations of why the fiduciary exception does not apply here.

Based on these discussions, Plaintiff's counsel identified 64 documents on Defendants' privilege logs in both *Jane Smith* and this case, and seeks production of those documents in both cases.  Plaintiff's counsel contends these are "exemplars" of other documents that should be produced from OHI's privilege log.  The request for OHI to disclose its privileged documents runs contrary to governing law in this district, and already established law of this case.

## II.   Argument

### A.   The Court May Enter a Protective Order to Protect the Bedrock Principle of Attorney-Client Privilege.

Federal Rule of Civil Procedure 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  To accomplish this, the moving party must demonstrate that a "clearly defined, specific and serious injury" will occur in the absence of such an order.  *Duling v. Gristede's Operating Corp.,* 266 F.R.D. 66, 71 (S.D.N.Y. 2010).

Case law makes clear that protecting disclosure of privileged information is proper grounds for entry of a protective order.  *See NXIVM Corp. v. O'Hara,* 241 F.R.D. 109, 124 (N.D.N.Y. 2007).  To obtain a protective order, the party should show the essential elements of the privilege.  *See G-I Holdings, Inc. v. Baron & Budd,* 199 F.R.D. 529, 533 (S.D.N.Y. 2001) (citing *von Bulow by Auersperg v. von Bulow,* 811 F.2d 136, 144 (2d Cir. 1987)).

It is a bedrock legal principle that a client should be able to consult with his attorney on a confidential basis, free from the risk that those communications will be disclosed to adversaries and used against the client.  *See MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, No. 09 Civ. 3255, 2012 U.S. Dist. LEXIS 92435, at *15 (S.D.N.Y. July 3, 2012) ("The purpose of the [attorney-client] privilege is to permit a client to confide fully and freely in his attorney, secure

March 12, 2021
Page 4

in the knowledge that his confidences will not later be exposed to public view to his
embarrassment or legal detriment.") (internal quotations omitted). Courts also recognize that
once an attorney-client communication is disclosed, it is a "bell" that would be "very difficult to
unring." *SEC v. Cassano*, 189 F.R.D. 83, 86 (S.D.N.Y. 1999). For that reason, Courts take
particular care to ensure that privileged documents are protected from unlawful disclosure.

## B. The Documents at Issue Are Protected by the Attorney-Client Privilege.

The documents at issue fall squarely within the attorney-client privilege. The attorney-
client privilege protects from disclosure: "(1) a communication between client and counsel that
(2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of
obtaining or providing legal advice." *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). The
assessment of whether a communication is privileged does not require a showing that obtaining
or providing legal advice was the "sole purpose" of the communication. *See Loguidice v.
McTiernan*, No. 14-CV-1323 (TJM/CFH), 2016 WL 4487779, at *10–11 (N.D.N.Y. Aug. 25,
2016). Rather, attorney-client privilege applies where the "predominant purpose of the
communication is to render or solicit legal advice." *In re Cty. of Erie*, 473 F.3d at 420.
Interpreting this case law, courts have recognized that the "predominant purpose" does not mean
"but for" and "cannot and does not draw a rigid distinction between a legal purpose on the one
hand and a business purpose on the other." *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F.
Supp. 3d 521, 529-30 (S.D.N.Y. 2015). Moreover, a party need not demonstrate that the
communications at issue would not have been made but for the fact that legal advice was sought.
*Id*.

Each of the 64 documents that are the subject of this motion clearly meet the predominant
purpose test. For example,



None of these communications is specific to a particular plan, or even directed to
ERISA plans alone. Rather, they reflect legal advice on issues that cut across large swaths of
OHI's and United's business.

For these and the other communications that are the subject of this motion, OHI
identified in its privilege log the counsel involved, and the subject and nature of the legal advice
requested or conveyed (which most often focused on tiered reimbursement and/or MHPAEA).

---

[2] Optum is a subsidiary of UnitedHealth Group.

(Continued...)

March 12, 2021
Page 5

OHI has attached as Exhibit A its privilege log entries for each document, and provides as Exhibit B further description of the documents and their privileged nature.[3]

### C. Nine of the Documents at Issue Also Are Protected by the Work Product Doctrine.

Nine of the documents at issue[4] also are protected from disclosure by the work product doctrine. The work product doctrine preserves a "zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)). The doctrine not only protects documents "prepared principally or exclusively to assist in litigation," but also documents whose "primary, ultimate, or exclusive purpose is to assist in making the business decision" if they were prepared "because of" the prospect of litigation. *Id.* at 1197-98 (memorandum analyzing business transaction and potential litigation was protected work product); *see also Wilder v. World of Boxing LLC*, 324 F.R.D. 57, 62 (S.D.N.Y. 2018) (it is "firmly established . . . that a document that assists in a business decision is protected by work product immunity if the document was created because of the prospect of litigation."). The work product doctrine similarly protects documents prepared for, or in anticipation of, a regulatory proceeding. *See United States v. Acquest Transit LLC*, 319 F.R.D. 83, 92 (W.D.N.Y. 2017); *U.S. Info. Sys., Inc. v. IBEW Loc. Union No. 3, AFL-CIO*, No. 00CIV4763RMBJCF, 2002 WL 31093619, at *2 (S.D.N.Y. Sept. 17, 2002).

Here, the nine documents over which OHI asserts work product protection either reference or provide updates regarding specific litigation or regulatory proceedings, or collect information to respond to regulatory inquiries or for use in specific litigation.[5]  For example,



These documents are clearly protected attorney work product.

OHI provides specifics supporting its assertion of privilege as to other identified documents in Exhibit A (privilege log) and Exhibit B (supplemental document descriptions).

---

[3] OHI has updated its privilege log entries to reflect its assertions of privilege as described in this motion. Exhibit B groups documents in related email chains together for brevity.

[4] As identified on Exhibit B, these documents are:                                                                    .

[5] OHI notes for reference that this litigation dates back to July 13, 2017, and that regulatory inquiries into parity issues date back even further.

March 12, 2021
Page 6

### D.  The Fiduciary Exception Does Not Apply to the Documents at Issue.

Notwithstanding the clearly privileged nature of the documents at issue, Plaintiff argues that OHI should be compelled to produce its privileged materials under ERISA's fiduciary exception to privilege.  This narrow exception, however, has a modest reach and courts have continually rejected the expansive construction advocated by Plaintiff.

As a threshold matter, it is Plaintiff's burden, not OHI's, to show the fiduciary exception applies.  *In re JP Morgan Cash Balance Litig.*, 2007 WL 1280623, at *1 (S.D.N.Y. Apr. 30, 2007); *see also United States v. Mett*, 178 F.3d 1058,1064 (9th Cir. 1999) ("The burden of answering this question falls properly on the [party asserting the fiduciary exception].").  Moreover, "where the attorney-client privilege is concerned, hard cases should be resolved in favor of the privilege, not in favor of disclosure." *Id.* at 1066.  Consequently, it is not enough for Plaintiff to broadly assert that OHI is an ERISA fiduciary and that, as a result, the exception applies.  Plaintiff must show that for each document, the fiduciary exception applies and the attorney-client privilege should be pierced.  Plaintiff cannot meet this burden.

### 1.  The Fiduciary Exception is Narrow and Applies Only to Legal Advice Provided to an ERISA Fiduciary Acting in a Fiduciary Capacity for the Benefit of the Beneficiary Seeking to Override Privilege.

The fiduciary exception is a narrow means by which to pierce the attorney-client privilege where an ERISA fiduciary must make available to an ERISA beneficiary, upon request, "any communications with an attorney that are intended to assist in the administration of the plan." *In re Long Island Lighting Co.*, 129 F.3d 268, 271–72 (2d Cir. 1997).  Fiduciary acts by a plan administrator are activities that involve a "discretionary determination about whether a claimant is entitled to benefits under the terms of the plan documents." *Varity Corp. v. Howe*, 516 U.S. 489, 511 (1996).  By definition, such fiduciary acts are specific to a particular ERISA plan.  These are distinct from "corporate business decision[s]," which courts recognize are not fiduciary in nature.  *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.,* 821 F.3d 352, 362 n.2 (2d Cir. 2016).  Courts also agree that settlor functions such as adoption, modification, or termination of a plan are not fiduciary in nature. *See Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432,443–444 (1999).

The fiduciary exception to the privilege doctrine is based on two rationales: (1) the ERISA trustee's duty to disclose to plan beneficiaries all information regarding plan administration and (2) that the purpose of the legal advice concerning a fiduciary function is to serve the beneficiary's best interest and, as such, the beneficiary is viewed as the client of the lawyer providing the advice.  *See Anderson v. Sotheby's Inc. Severance Plan,* 2005 WL 6567123, at *9 (S.D.N.Y. May 13, 2005); *see also United States v. Jicarilla Apache Nation*, 564 U.S. 162, 173 (2011) (stating that the federal court of appeals apply the fiduciary exception based on the same two criteria).

The rationale stems from English common law, which generally provides that "when a trustee obtained legal advice to guide the administration of the trust, and not for the trustee's own defense in litigation, the beneficiaries were entitled to the production of documents related to that

March 12, 2021
Page 7

advice." *Jicarilla*, 564 U.S. at 170. The Supreme Court in *Jicarilla*, however, limited the application of the fiduciary exception when a trustee's status is governed by statute rather than common law. The Court reasoned that a trust relationship stemming from the statute at issue was "limited or bare compared to a trust relationship between private parties at common law." 564 U.S. at 174 (internal quotation marks omitted). The Court considered several factors, including: (i) the trustee relationship was not a private relationship, but rather one established and proscribed by statute, *id.* at 176; (ii) the trustee had distinctly separate and potentially competing interest for which it needed to seek legal advice, and thus the "real client" theory did not squarely apply; *id.* at 181–82; (iii) the trustee did not have the same common law disclosure obligations as a private trustee; and (iv) the trustee attorney was paid from a source other than the trust. *Id.* at 179. While the Court did "not question the undisputed existence of a general trust relationship," based on these factors, the Court held that the Government was not a private trustee and, as such, it was inappropriate to apply common-law trust principles as justification for application of the fiduciary exception. *Id.* at 178. The Court held that the plaintiff must point to a right conferred by statute or regulation in order to obtain otherwise privileged information. *Id.*

Similar to *Jicarilla*, OHI was the plan administrator of Plaintiff's health plan, and not a private trustee. Therefore, Plaintiff cannot credibly argue she is the "real client" based on common-law trust principles. First, the trustee relationship is proscribed by statute rather than common law. Indeed, Plaintiff's lawsuit is based on a breach of duties under ERISA, rather than general common law duties. Second, OHI has several competing interests for which it needs to seek legal advice, and many of those interests are outside of a fiduciary role, such as legitimate interests in the management of its assets, addressing its client relationships with both fully-insured and self-insured ERISA plans, and assessing its own litigation and legal risk. *See Wachtel v. Health Net, Inc.*, 482 F.3d 225, 234 (3d Cir. 2007) (refusing to apply the fiduciary exception to insurers, as insurers have interests distinct from those of its beneficiaries). Third, OHI's disclosure requirements are outlined within ERISA and within its own plan documents. And fourth and finally, OHI pays for legal services out of its own assets. Thus, like the Court in *Jicarilla*, it is inappropriate to apply common-law trust principles as justification for application of the fiduciary exception. The Plaintiff here has no right to the documents she seeks under the legal fiction that she is the real client of the legal advice.

The second justification for the application of the fiduciary exception is the ERISA trustee's duty to disclose to plan beneficiaries information regarding plan administration. *See In re Long Island Lighting Co.*, 129 F.3d at 270–73. Importantly, however, courts have continually rejected the expansive construction advocated by Plaintiff that would allow disclosure of all privileged communications that could remotely relate to the trustee's obligations under the plan. *Black v. Bowes*, No. 05 Civ. 08 (GEL), 2006 WL 3771097, at *3 (S.D.N.Y. Dec. 21, 2006). Courts recognize that the exception is a narrow one and reject attempts by ERISA beneficiaries to construe any and all privileged communications as relating to the administration of a plan. *See Mett*, 178 F.3d at 1063.

Yet this is exactly Plaintiff's argument—that because OHI administers an ERISA plan, any and all communications somehow relate to plan administration, and the fiduciary exception pierces the attorney-client privilege in all instances. This is evidenced by the broad swath of documents Plaintiff seeks: legal advice concerning parity compliance, legal advice concerning

March 12, 2021
Page 8

development of compliance tools, legal advice related to draft disclosure documents, and legal advice related to regulatory investigations and potential plan liability.  Notably absent is a single communication that actually concerns administration of the Plaintiff's plan or a single communication that concerns adjudication of the Plaintiff's claim.  Plaintiff should not be allowed to pierce the sanctity of the attorney-client privilege with hollow allegations about the fiduciary nature of legal advice when she makes no effort to tie it to administration of her actual plan.

### 2.   The Legal Advice Rendered to OHI Did Not Relate to a Fiduciary Function.

OHI's general development and analysis of tiered reimbursement and the parity laws, which are not specific to the Plaintiff or Plaintiff's ERISA plan, are not "plan administration" or for the benefit of Plaintiff, and therefore are not fiduciary functions.  The Court need look no further than its own opinions *in this case* to confirm this conclusion.  In the order on Defendants' motion to dismiss, the Court recognized that "[g]eneral fiduciary duties under ERISA are not triggered . . . when the decision at issue is, at its core, a corporate business decision, and not one of a plan administrator."  ECF No. 45 at 7 (quoting *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 362 n.2 (2d Cir. 2016) (internal quotation marks and alterations omitted)).  Applying this law to tiered reimbursement, Judge Donnelly ruled that "***setting provider reimbursement rates . . . was a business decision rather than a fiduciary function.***" *Id.* (emphasis added).  As the Court explained:

> In *American Psychiatric Association*,[6] a group of psychiatrists and psychiatric associations sued an insurer and its parent company for breach of fiduciary duty for implementing a reimbursement policy that would "generally reimburse psychiatrists less than they reimburse non-psychiatric physicians who provide comparable medical services." *Id.* at 160 (internal quotation marks omitted). The court dismissed the claim, concluding that the defendants' reimbursement policy was a business decision, not a fiduciary function. *Id.* at 169. Here, the plaintiff's argument is the same—that the defendants' setting of reimbursement rates is a fiduciary function. ***Like the defendants in American Psychiatric Association, the defendants in this case were not acting as fiduciaries when they set reimbursement rates and polices.***

ECF No. 45 at 7–8 (emphasis added).

This ruling constitutes the law of this case, and governs the issues raised here.  *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) ("The doctrine of the law of the case posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case.") (internal citations omitted); *see also United States v. Asare*, 476 F. Supp. 3d 20, 34 (S.D.N.Y. 2020); *Chan Ah Wah v. HSBC N. Am. Holdings Inc.,* 2019 WL 859042, at *4 (S.D.N.Y. Feb. 22, 2019).  Put simply, if development and application of a corporate policy relating to tiered reimbursement is not a fiduciary function, the fiduciary exception does not apply to legal advice on this topic.

---

[6] *Am. Psychiatric Ass 'n v. Anthem Health Plans, Inc.*, 50 F. Supp. 3d 157, 168–69 (D. Conn. 2014).

The Court's ruling makes sense—a corporate business decision like creation and application of the tiered reimbursement policy is not a fiduciary act. Plaintiff does not and cannot contend the tiered reimbursement policy at issue was developed specifically for the Plaintiff's ERISA plan. Rather, Plaintiff challenges a policy that was not limited to her ERISA plan, or to ERISA plans at all. Plaintiff's own concession that the tiered reimbursement policy applied generally to OHI plans governed by ERISA demonstrates her recognition that tiered reimbursement was not a policy developed for her health plan. Indeed, none of the privileged documents at issue involve discussions specific to Plaintiff or her plan—or even discuss Plaintiff's plan. As an example,

There can be no credible argument that this legal advice was provided to OHI in its fiduciary capacity for the benefit of Plaintiff.

The same is true of other parity topics discussed in the documents at issue. The documents providing legal advice on OHI or its corporate affiliates' parity procedures are not plan-specific. Rather, they cut across large swaths of OHI/United business, both ERISA and non-ERISA. OHI/United was not acting in a fiduciary capacity when, for example,

These are business functions, not fiduciary functions. OHI/United was assessing its own risks. The advice is therefore not subject to the fiduciary exception.

Moreover, the fiduciary exception does not apply to legal advice involving a "plan's design or amendment." *In re Long Island Lighting Co.*, 129 F.3d at 271; *see also Leber v. Citigroup*, No. 07-CV-09329 (SHS)(DF), 2015 WL 6437475, at *2 (S.D.N.Y. Oct. 16, 2015) ("When . . . an administrator performs 'settlor functions,' such as the establishing, funding, amending, or terminating a plan, its actions are akin to those taken by the settlor of a trust, rather than a trustee, and ERISA imposes no fiduciary obligations for such conduct."). Thus, to the extent Plaintiff is contending OHI violated a fiduciary obligation by including tiered reimbursement language in the Plaintiff's plan documents, that is an act of plan design or amendment—*i.e.*, a settlor function—that is not the subject of fiduciary obligations.

### 3. The Fiduciary Exception Does Not Apply to Legal Advice Related to Active and Potential Legal Actions.

For the nine documents at issue that are subject to the work product doctrine (*see supra* n.4), the fiduciary exception also does not apply because the legal advice related to imminent or anticipated litigation or regulatory proceeding. *CFIP Master Fund, Ltd., v. Citibank, N.A.*, 738 F. Supp. 2d 450, 475 n.29 (S.D.N.Y. 2010) ("It is clear from the Court's review of these communications that they were all made in anticipation of litigation, a fact that in itself renders the fiduciary exception inapplicable."); *see also Fischel v. Equitable Life Assurance*, 191 F.R.D. 606, 609 (N.D. Cal. 2000) (reasoning that where the goal of the advice is to advise on potential liability, the fiduciary exception does not apply).

March 12, 2021
Page 10

The logic behind this is simple. Where attorneys provide advice to the plan administrator on potential liability for itself, the advice is not for the benefit of the plan beneficiary. *See Pearlstein v. BlackBerry Ltd.*, 13-CV-07060 (CM)(KHP), 2019 WL 1259382, at *11 (S.D.N.Y. March 19, 2019) (the "rationale underlying the fiduciary exception to the attorney-client privilege does not support its application to work product."). Plaintiff is seeking recovery from OHI based on OHI's application of tiered reimbursement. It would make no sense if OHI had to turn around and disclose legal advice it received on potential litigation risks to a party suing and creating that risk.

Here, the nine documents in question discuss legal strategy and risk mitigation for tiered reimbursement and other issues, often in discussions *about the instant case* or related investigations. *See, e.g.*, █████████████████████
████████████████████████████ To breach privilege as to these communications would essentially be asking OHI to turn over its confidential legal case file to its adversary. The law around the fiduciary exception and privilege does not support such an extreme, overreaching, and patently unfair outcome.

### 4. Plaintiff Cannot Show Good Cause to Access OHI's Privileged Communications.

Plaintiff's sweeping request also should be denied because Plaintiff cannot establish any need to see OHI's privileged communications. A number of courts have required a showing of "good cause" to apply the fiduciary exception in ERISA cases. *See, e.g.*, *Donovan v. Fitzsimmons*, 90 F.R.D. 583, 586 (N.D. Ill. 1981); *Geissal v. Moore Med. Corp.*, 192 F.R.D. 620, 625-26 (E.D. Mo. 2000). This good cause standard ensures that the fiduciary exception does not swallow whole the attorney-client privilege, and the attendant risk of chilling attorney-client communications.

Plaintiff here has not even attempted to articulate why it needs OHI's privileged communications to litigate its case—let alone in a manner sufficient to constitute "good cause." The fact is that Plaintiff has no reasonable need for OHI's privileged communications. OHI has already produced more than 21,000 documents in this case, covering a range of topics Plaintiff contends are relevant. Plaintiff simply does not need OHI's privileged and confidential communications on top of the substantial production already completed.

### III.    Conclusion

For the reasons set forth above, OHI respectfully requests that the Court enter a protective order preventing disclosure of OHI's privileged communications.

Thank you for your attention to this matter.

March 12, 2021
Page 11

Respectfully submitted,


*/s/ Christopher Flynn*
Christopher Flynn
Michael W. Lieberman

cc:  *All Counsel of Record (via email)*

March 12, 2021
Page 12

## CERTIFICATE OF SERVICE

I hereby certify that on this March 12, 2021, the foregoing document was filed with the Clerk of the Court and served via electronic mail upon the following counsel:

| | |
|---|---|
| D. Brian Hufford<br>Jason S. Cowart<br>Shawn P. Naunton<br>ZUCKERMAN SPAEDER LLP<br>485 Madison Avenue, 10th Fl.<br>New York, NY 10022<br>212.704.9600<br>212.704.4256 (fax)<br>dbhufford@zuckerman.com<br>jcowart@zuckerman.com<br>snaunton@zuckerman.com<br><br>Andrew Goldfarb<br>Daniel Amzallag<br>ZUCKERMAN SPAEDER LLP<br>1800 M St. NW<br>Washington, DC 20036<br>agoldfarb@zuckerman.com<br>damzallag@zuckerman.com<br><br>John W. Leardi<br>Paul Donald Werner<br>BUTTACI LEARDI & WERNER LLC<br>212 Carnegie Center, Suite 202<br>Princeton, NJ 08540<br>jwleardi@buttacilaw.com<br>pdwerner@buttacilaw.com<br><br>*Counsel for Plaintiff and the Putative Class* | Meiram Bendat<br><br>PSYCH-APPEAL, INC.<br><br>8560 West Sunset Boulevard, Suite 500<br>West Hollywood, CA 90069<br>mbendat@psych-appeal.com<br><br>310.598.3690 Ext: 101<br><br>888.975.1957 (fax)<br><br><br><br>*Counsel for Plaintiff and Putative Class* |

/s/ *Michael W. Lieberman*
Michael W. Lieberman